UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JACQUELINE PUTTRE,

                              Plaintiff,

        - against -

                                              **COMPLAINT**

AMERICAN PIZZA INC d/b/a AMERICAN BAR
and SPOTTED DOG and ABC COMPANIES 1-10
(said names fictitious) ROBERT GEROLA,
ROBERT O'ROURKE, and CLAUDINE O'ROURKE,
individually,

                              Defendants.
-------------------------------------------------------------------X

       Plaintiff Jacqueline Puttre (hereinafter referred to as "Puttre" or "Plaintiff"), by and through

her attorney, Jacob Aronauer of The Law Offices of Jacob Aronauer, complaining of American

Pizza Inc d/b/a American Bar ("American Bar") and the Spotted Dog and ABC Companies 1-10

(said names fictitious) collectively "Corporate Defendants") and Robert Gerola ("Gerola"), Robert

O'Rourke ("R. O'Rourke"), and Claudine O'Rourke ("C. O'Rourke") individually (collectively,

"Defendants"), alleges the following:

## NATURE OF THE ACTION

1.    This is a civil action brought by Plaintiff to remedy violations of the wage-and-hour

       provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et. seq. and the New

       York Labor Law ("NYLL") by Defendants.

2.    Plaintiff worked as a bartender for American , a bar which Gerola and R. O'Rourke jointly

       owned and operated.

3.    When Gerola and R. O'Rourke sold American Bar and opened The Spotted Dog, with C. O'Rourke as an additional joint owner, Plaintiff worked as a bartender for The Spotted Dog.

4.    Plaintiff brings this action to remedy Defendants' violations of the FLSA and seeks unpaid minimum wages, liquidated damages, reasonable attorneys' fees, and all other appropriate legal and equitable relief, pursuant to 29 U.S.C. §§ 216(b) and 217.

5.    Plaintiff also brings this action to remedy violations of the NYLL, including NYLL §§ 190 et seq., §§ 650 et seq., and 12 NYCRR § 146. Plaintiff seeks unpaid minimum wages, unpaid overtime wages, unpaid spread-of-hours wages, liquidated damages, statutory interest, statutory penalties, attorneys' fees, and all other appropriate legal and equitable relief, pursuant to the NYLL.

6.    Plaintiff also seeks damages under NYLL § 663 for the failure of Defendants to pay Plaintiff any wages whatsoever for virtually the entire duration of her employment.

7.    Plaintiff also brings this action under the Wage Theft Prevention Act for Defendants' failure to provide wage notices and wage statements in violation of NYLL §§195 (1) and (3).

**JURISDICTION AND VENUE**

8.    This Court has jurisdiction over this action under 28 U.S.C. § 1331, 29 U.S.C. §§ 216(b)(c) and 217; and 28 U.S.C. § 1337.

9.    This Court has supplemental jurisdiction over the New York state law claims under the principles of pendent and ancillary jurisdiction.

10.    Venue is proper in this district under 28 U.S.C. § 1391(b)(c), because all or a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

### Plaintiff Jackie Puttre

11.     Plaintiff is an adult individual residing in New York County, New York.

12.     Plaintiff worked for Defendants from in or about April 2020 until in or about March 2023.

13.     Plaintiff was employed as a bartender.

14.     At all relevant times, Plaintiff was a covered employee within the meaning of the FLSA and the NYLL.

### Defendant American Bar

15.     On information and belief, American Bar was a restaurant and bar incorporated in the State of New York, having its principal place of business located at 1471 1st Ave., New York, NY 10075.

16.     At all times relevant to this action, American Bar was an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

17.     On information and belief, American Bar had (1) employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (2) an annual gross volume of sales in excess of $500,000.00.

18.     Defendants have employed and/or jointly employed Plaintiff at all relevant times.

19.     In January of 2022, American Bar ceased operations.

### Defendant The Spotted Dog

20.     On information and belief, The Spotted Dog is a restaurant and bar incorporated in the State of New York, having its principal place of business located at 1154 1st Ave., New York, NY 10065.

21.     At all times relevant to this action, The Spotted Dog was an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

22.     On information and belief, The Spotted Dog had (1) employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (2) an annual gross volume of sales in excess of $500,000.00.

23.     Defendants have employed and/or jointly employed Plaintiff at all relevant times.

**Defendant Robert Gerola**

24.     Robert Gerola is a person engaged in business in New York County, who is sued individually in his capacity as an owner, officer and/or agent of Corporate Defendants.

25.     On information and belief, Gerola owned and operated American Bar jointly with R. O'Rourke.

26.     On information and belief, Gerola owned and operated The Spotted Dog jointly with R. O'Rourke and C. O'Rourke.

27.     On information and belief, Gerola maintained control, oversight and direction over Corporate Defendants.

28.     Gerola exercised sufficient control over Corporate Defendants to be considered Plaintiff's employer under the FLSA and NYLL.

29.      At all relevant times, Gerola had the authority to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

30.     At all relevant times, Gerola has had power over payroll decisions at Corporate Defendants, including the power to retain employee time and/or wage records.

31.     Gerola is a covered employer within the meaning of the FLSA, and at all relevant times, has employed and/or jointly employed Plaintiff.

**Defendant Robert O'Rourke**

32.     R. O'Rourke is a person engaged in business in New York County, who is sued individually in his capacity as an owner, officer and/or agent of American Bar.

33.     On information and belief, R. O'Rourke owned and operated American Bar jointly with Gerola.

34.     On information and belief, R. O'Rourke owned and operated The Spotted Dog jointly with Gerola and C. O'Rourke.

35.     On information and belief, R. O'Rourke maintained control, oversight and direction over Corporate Defendants.

36.     R. O'Rourke exercised sufficient control over Corporate Defendants to be considered Plaintiff's employer under the FLSA and NYLL.

37.      At all relevant times, R. O'Rourke had the authority to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

38.     At all relevant times, R. O'Rourke has had power over payroll decisions at Corporate Defendants, including the power to retain employee time and/or wage records.

39.     R. O'Rourke is a covered employer within the meaning of the FLSA, and at all relevant times, has employed and/or jointly employed Plaintiff.

**Defendant Claudine O'Rourke**

40.     C. O'Rourke is a person engaged in business in New York County, who is sued individually in her capacity as an owner, officer and/or agent of The Spotted Dog.

41.     On information and belief, C. O'Rourke owned and operated The Spotted Dog jointly with Gerola and R. O'Rourke.

42.     On information and belief, C. O'Rourke maintained control, oversight and direction over The Spotted Dog.

43.     C. O'Rourke exercised sufficient control over The Spotted Dog to be considered Plaintiff's employer under the FLSA and NYLL.

44.     At all relevant times, C. O'Rourke had the authority to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

45.     At all relevant times, C. O'Rourke has had power over payroll decisions at The Spotted Dog, including the power to retain employee time and/or wage records.

46.     C. O'Rourke is a covered employer within the meaning of the FLSA, and at all relevant times, has employed and/or jointly employed Plaintiff.

## STATEMENT OF FACTS

**Plaintiff Jackie Puttre's Employment with Defendants**

47.     From on or about April 2021 until on or about January 2022, Puttre worked for Defendants at American Bar.

48.     Additionally, from on or about April 2022 until on or about March 2023, Puttre worked for Defendants at The Spotted Dog.

49.     At both locations, Puttre was employed as a bartender.

**April 2021**

50.     For the month of April 2021, Plaintiff worked four shifts from 3pm to approximately 8 or 9 pm.

51.     For the month of April 2021, Plaintiff also worked four shifts from 9pm to 6 am.

52.     Overall, for the month of April 2021 Plaintiff worked approximately 60 hours.

53.     Plaintiff was not paid any money for her labor.

**May 2021**

54.     For the month of May 2021, Plaintiff worked five shifts from 3pm to approximately 8 or 9 pm.

55.     For the month of May 2021, Plaintiff worked approximately four shifts from 9pm to 6am.

56.     Overall, for the month of May, Plaintiff worked approximately 66 hours.

57.     Plaintiff was not paid any money for her labor.

**June 2021**

58.     For the month of June 2021, Plaintiff worked seven shifts from 3pm to approximately 8 or 9pm.

59.     For the month of June 2021, Plaintiff worked approximately four shifts from 9pm to 6am.

60.     Overall, for the month of June 2021, Plaintiff worked approximately 78 hours.

61.     Plaintiff was not paid any money for her labor.

**July 2021**

62.     For the month of July 2021, Plaintiff worked four shifts from 3pm to 8 or 9 pm.

63.     For the month of July 2021, Plaintiff worked four shifts from 9pm to 6am.

64.     For the month of July 2021, Plaintiff worked one shift from 3pm to 6am.

65.     Overall, for the month of July 2021, Plaintiff worked approximately 87 hours.

66.     Plaintiff was not paid any money for her labor.

**August 2021**

67.     For the month of August 2021, Plaintiff worked five shifts from 3pm to 8 or 9pm.

68.     For the month of August 2021, Plaintiff worked four shifts from 9pm to 6 am.

69.     For the month of August 2021, Plaintiff worked one shift from 3pm to 9 am.

70.     Overall, for the month of August 2021, Plaintiff worked approximately 84 hours.

71.     Plaintiff was not paid any money for her labor.

**September 2021**

72.     For the month of September 2021, Plaintiff worked seven shifts from 3pm to 8 or 9pm.

73.     For the month of September 2021, Plaintiff worked five shifts from 9pm to 6am.

74.     Overall, for the month of September 2021, Plaintiff worked approximately 87 hours.

75.     Plaintiff was not paid any money for her labor.

**October 2021**

76.     For the month of October 2021, Plaintiff worked seven shifts from 3pm to 8 or 9pm.

77.     For the month of October 2021, Plaintiff worked four shifts from 9pm to 6am.

78.     Overall, for the month of October 2021, Plaintiff worked 78 hours.

79.     Plaintiff was not paid any money for her labor.

**November 2021**

80.     For the month of November 2021, Plaintiff worked five shifts from 3pm to 8 or 9pm.

81.     For the month of November 201, Plaintiff worked four shifts from 9pm to 6 am.

82.     For the month of November 2021, Plaintiff worked one shift from 3pm to 2am.

83.     Overall, for the month of November 2021, Plaintiff worked a total of 76 hours.

84.     Plaintiff was not paid any money for her labor.

**December 2021**

85.     For the month of December 2021, Plaintiff worked four shifts from 3pm to 8 or 9pm.

86.     For the month of December 2021, Plaintiff worked four shifts from 9pm to 6am.

87.     For the month of December 2021, Plaintiff worked one double shift from 3pm to 6am.

88.     Overall, for the month of December 2021, Plaintiff worked a total of 65 hours.

89.     Plaintiff was not paid any money for her labor.

**January 2022**

90.     Plaintiff began working at the Spotted Dog.

91.     In January 2022, Plaintiff worked one shift from 1pm to 9am.

92.     Plaintiff was not paid any money for her labor.

**February 2022**

93.     In February 2022, Plaintiff worked a private event at the FDNY on behalf of Bob ORourke

        from 3pm to 11pm.

94.     Plaintiff was not paid any money for her labor.

**May 2022**

95.     In May 2022, Plaintiff worked one shift from 2pm to 9pm.

**June 2022**

96.     In June 2022, Plaintiff worked four shifts from 1pm to 8pm.

97.     Overall, in June 2022 Plaintiff worked 28 hours.

98.     Plaintiff was not paid any money for her labor.

**July 2022**

99.     In July 2022, Plaintiff worked four shifts from 1pm to 8pm.

100.    Overall, in July 2022, Plaintiff worked four shifts for a total of 28 hours.

101.    Plaintiff was not paid any money for her labor.

**August 2022**

102.    In August 2022, Plaintiff worked five shifts from 1pm to 8pm.

103.    Overall, in August 2022 Plaintiff worked a total of 35 hours.

104.    Plaintiff was not paid any money for her labor.

**September 2022**

105.    In September 2022, Plaintiff worked three shifts from 3pm to 8pm.

106.    Plaintiff was not paid any money for her labor.

**October 2022**

107.    In October 2022, Plaintiff worked four shifts from 4pm to 8pm.

108.    In October 2022, Plaintiff worked a total of 16 hours.

109.    Plaintiff was not paid any money for her labor.

**November 2022**

110.    In November 2022, Plaintiff worked nine shifts from 4pm to 8pm.

111.    In November 2022, Plaintiff worked a total of 36 hours.

112.    In November Plaintiff received checks without withholding for four of these shifts.

113.    In November 2022, Plaintiff received $40 per shift for these four shifts.

**December 2022**

114.    In December 2022, Plaintiff worked eight shifts from 4pm through 8pm.

115.    In December 2022, Plaintiff received checks total $320 without withholdings.

116.    It was unclear what amount the $320 was meant to cover with respect to the shifts/hours
        worked.

**January 2023**

117.    In January 2023, Plaintiff worked four shifts from 4pm to 8pm.

118.    In January 2023, Plaintiff was not paid any money for her labor.

119.   In January 2023, Plaintiff did not work from January 3rd through the 5th because Gerola told Plaintiff that the temporary liquor license had not arrived in the mail and therefore they could not open the bar.

120.   Nonetheless, Gerola still opened the bar without a valid liquor license.

**February 2023**

121.   In February 2023, Plaintiff worked eleven shifts from 4pm through 8pm.

122.   In February 2023, Plaintiff worked a total of 44 hours.

123.   Plaintiff was not paid for her labor.

**March 2023**

124.   In March 2023, Plaintiff worked four shifts from 4pm to 8pm.

125.   In March 2023, Plaintiff worked a total of 16 hours.

**Defendants' Violations of the Wage Theft Prevention Act**

126.   The NYLL and Wage Theft Prevention Act require employers to provide all employees with a written notice of wage rates.

127.   Throughout the relevant time period, Defendants paid Plaintiff without the proper accompanying statement listing the overtime rate or rates of pay, the number of regular hours worked and the number of overtime hours worked, gross wages, deductions, allowances, if any, claimed as part of the minimum wage, and net wages.

128.   Plaintiff was never given a notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer and required by NYLL 191; the name of the employer; any "doing business as" names used by the employer; the physical address

of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; and anything otherwise required by law.

**Prior Lawsuits Against Defendants**

129.   This is at least the fourth lawsuit against Defendants for unpaid wages.

130.   The first lawsuit was filed in the Southern District of New York and it is *Mollere v. The All American Bar on First Avenue Inc. et al.*, 14-cv-7095.

131.   In *Mollere*, Mollere was a former bartender who sued for not being paid any wages whatsoever by Defendants.

132.   This matter settled for an undisclosed sum.

133.   The second lawsuit was filed in the Southern District of New York and it is *Butler v. The All American Bar on First Avenue Inc., et al.*, 21-cv-00164 (SLC).

134.   In *Butler*, Butler was a bartender who likewise sued for Defendants failure to pay wages in compliance with the FLSA and the NYLL—Butler alleged that she only received a $25 cash shift payment.

135.   Two additional Plaintiffs joined *Butler*.

136.   *Butler* settled for $102,500.00.  *See* dkt 098.

137.   The third lawsuit was filed in the Southern District of New York and it is *Hollis v. The All American Bar on First, Inc. et al.*, 22-cv-01466 (JHR) (RWL).

138.   In *Hollis*, Ellen Hollis, a former bartender for Defendants, sued for unpaid wages.

139.   Like Plaintiff, *Hollis* was not paid any wages for her work as a bartender on behalf of Defendants.  *See* dkt 001, ¶ 61.

## FIRST CAUSE OF ACTION
### Unpaid Minimum Wages in Violation of the Fair Labor Standards Act

140.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

141.    The minimum wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 et seq., and the supporting federal regulations, apply to Defendants and protect Plaintiff.

142.    Defendants willfully failed to pay Plaintiff the appropriate minimum wage for all hours worked, as required by the FLSA, 29U.S.C. §§ 201 et seq.

143.    Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional. Defendants are aware or should have been aware that the practices described in this Complaint were unlawful. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff.

144.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 et seq.

145.    As a result of Defendants' willful violations of the FLSA, Plaintiff has been deprived of minimum wage compensation in amounts to be determined at trial, and is entitled to recovery of such amounts, liquidated damages, pre-judgment interest, attorney's fees, costs and other compensation pursuant to 29 U.S.C. §§ 201 et seq.

## SECOND CAUSE OF ACTION
### Unpaid Minimum Wages in Violation of New York Labor Law

146.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

147.    Defendants have failed to pay Plaintiff the proper minimum wage to which she is entitled under the NYLL and the supporting New York State Department of Labor Regulations.

148.    Through their knowing or intentional failure to pay Plaintiff the proper minimum wage for some or all of the hours she worked, Defendants have willfully violated the NYLL, Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations.

149.    Due to Defendants' willful violations of the NYLL, Plaintiff is entitled to recover from Defendants her unpaid minimum wages, liquidated damages, reasonable attorneys' fees, costs and pre-judgment and post-judgment interest.

### THIRD CAUSE OF ACTION
### Failure to Provide Spread-of Hours Pay in Violation of New York Labor Law

150.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

151.    Throughout her employment, Plaintiff frequently worked more than ten hours in a workday.

152.    Defendants willfully failed to compensate Plaintiff with an extra hour's pay at the basic New York minimum hourly wage rate on days in which the length of her workday was more than ten hours, as required by New York law.

153.    Through their knowing or intentional failure to pay Plaintiff spread-of-hours pay, Defendants have willfully violated the NYLL, Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations.

154.    Due to Defendants' willful violations of the NYLL, Plaintiff is entitled to recover from Defendants her unpaid spread-of-hour wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and prejudgment and post- judgment interest.

### FOURTH CAUSE OF ACTION
### Failure to Provide Wage Notices in Violation of New York Labor Law

155.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

156.   Defendants have willfully failed to supply Plaintiff with wage notices, as required by NYLL, Article 6, § 195(1), in English or in the language identified by Plaintiff as her primary language, containing Plaintiff's rate or rates of pay and basis thereof, whether paid by the hour, shift, day week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

157.   Through their knowing or intentional failure to provide Plaintiff with the wage notices required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Relations.

158.   Due to Defendants' willful violations of NYLL, Article 6, § 195(1), Plaintiff is entitled to statutory penalties of fifty dollars for each workday that Defendants failed to provide Plaintiff with wage notices, or a total of five thousand dollars, reasonable attorney's fees, costs and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-b).

### FIFTH  CAUSE OF ACTION
### Failure to Provide Wage Statements in Violation of New York Labor Law

159.   Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

160.   Defendants have willfully failed to supply Plaintiff with accurate statements of wages as required by NYLL, Article 6, § 195(3), containing the dates of work covered by that

payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

161.   Through their knowing or intentional failure to provide Plaintiff with the wage statements required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

162.   Due to Defendants' willful violations of NYLL, Article 6, § 195(3), Plaintiff is entitled to statutory penalties of two hundred and fifty dollars for each workday that Defendants failed to provide Plaintiff with accurate wage statements, or a total of five thousand dollars, reasonable attorney's fees, costs and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-d).

## SIXTH CAUSE OF ACTION
## New York Labor Law-Unpaid Wages Under NYLL § 663

163.   Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

164.   At all relevant times, Plaintiff was an "employee" within the meaning of the New York Labor Law.  Similarly, at all relevant times, Defendants, including the individually named Defendant Azmy, were "employers" within the meaning of the New York Labor Law.

165.   Defendants failed to pay Plaintiff his earned wages for the periods of time and in the manner as set forth above.

166.   Defendants' failure to pay Plaintiff her earned wages was willful and not based on any good faith belief of compliance with New York Labor Law § 663, et seq.

16

167.   As a result of the foregoing, Plaintiff has been denied wages required under New York

Labor Law § 663, et seq. and is entitled to an award of unpaid wages in an amount to be

determined at trial, plus liquidated damages, prejudgment interest and reasonable

attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the entry of an order and judgment against American

Pizza Inc d/b/a American Bar and the Spotted Dog, respectively,  and Robert Gerola, Robert

O'Rourke, and Claudine O'Rourke, jointly and severally, as follows:

(a)     Damages for the unpaid minimum wages due to Plaintiff, in an amount to be

determined at the trial of the action, along with liquidated damages as provided by

the FLSA;

(b)     Damages for the unpaid minimum wages and spread-of-hours wages due to

Plaintiff, in an amount to be determined at the trial of the action, along with

liquidated damages as provided by the NYLL;

(c)     Damages for failure to pay any wages whatsoever under NYLL § 663, along with

liquidated damages as provided by the NYLL;

(d)     Statutory penalties of fifty dollars for each workday that Defendants failed to

provide Plaintiff with a wage notice, or a total of five thousand dollars, as provided

for by NYLL, Article 6 § 198;

(e)     Statutory penalties of two hundred and fifty dollars for each workday that

Defendants failed to provide Plaintiff with accurate wage statements, or a total of

five thousand dollars, as provided for by NYLL, Article 6 § 198;

(f)     For pre-judgment and post-judgment interest on the foregoing amounts;

(g)     For the costs and disbursements of the action, including attorney's fees; and,

(h)     For such other further and different relief as the Court deems just and proper.

Dated: June 5, 2023
       New York, New York

                                    **THE LAW OFFICES OF JACOB ARONAUER**

                              By:     */s/ Jacob Aronauer*
                                      Jacob Aronauer, Esq.
                                      225 Broadway, 3rd Floor
                                      New York, NY 10007
                                      (212) 323-6980
                                      jaronauer@aronauerlaw.com

                                      *Attorney for Plaintiff*